**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **SHERRYLYN MITCHELL,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil No. SAG-25-01149** |
| | * | |
| **SCOTT TUNER, Secretary,** | * | |
| **DEPARTMENT OF HOUSING AND** | * | |
| **URBAN DEVELOPMENT** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM OPINION**</u>

Plaintiff Sherrylyn Mitchell ("Plaintiff"), at the time self-represented, filed this action in state court against Defendant Scott Tuner, Secretary of the Department of Housing and Urban Development ("HUD"). ECF 1-4. HUD removed the case to this Court. ECF 1. Plaintiff subsequently retained counsel, who filed a Second Amended Complaint. ECF 13. HUD has now filed a motion to dismiss Plaintiff's claims. ECF 14. Plaintiff has opposed the motion, ECF 15, and HUD filed a reply, ECF 16. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, HUD's motion will be granted and Plaintiff's claims will be dismissed.

## I. FACTUAL BACKGROUND

The following facts relevant to this motion are derived from the Second Amended Complaint, ECF 13, and are assumed to be true for the purposes of adjudicating this motion. Plaintiff, an African American woman born in 1961, began work as a Grade 14 Term Employee in HUD's Ginnie Mae division on August 7, 2017. *Id.* ¶¶ 4, 6. During an all-hands meeting on June 19, 2018, Ginnie Mae's Executive Vice President announced that Career Conditional positions would be created for all Term employees. *Id.* ¶ 8. In December, 2018, Plaintiff learned

that all of the other Term employees in the Office of Securities Operations had been given the opportunity to apply for jobs and convert to Career Conditional status. *Id.* ¶ 11. All of those employees were younger than Plaintiff. *Id.* ¶ 31. Plaintiff contacted the Senior Vice President of the Office of Securities Operations, John Daugherty, "with concerns of [discrimination]." *Id.* ¶ 12. Daugherty expressed surprise that Plaintiff had not been converted and told her that it was an oversight that would be rectified. *Id.* ¶¶ 13, 14.

In April and May of 2019, two Career Conditional Senior Business Analyst vacancies were posted in Plaintiff's department, but Plaintiff's supervisor, Victoria Vargas, "diverted" the positions to another manager and structured the announcements "to exclude term employees from applying." *Id.* ¶¶ 15, 17, 18. Vargas specifically recruited a white male, age 41, to fill one of the positions. *Id.* ¶ 19.

On July 21, 2019, Vargas hired Sylvia Purvis[1] to a Career Conditional position without posting the vacancy. *Id.* ¶¶ 21, 22. Vargas and Purvis were friends, and Purvis lacked knowledge and experience with "the computer system or Mortgage-Backed Securities." *Id.* ¶¶ 23, 24. On an unspecified date, Vargas also hired Diego Leguizamon to a Career Conditional position without posting the vacancy. *Id.* ¶¶ 25, 26.

## II.     PROCEDURAL BACKGROUND

Plaintiff made initial contact with a counselor in the HUD Office of Departmental Equal Employment Opportunity on July 22, 2019, the day after Purvis was hired. ECF 14-2 at 3. She received a Right to File letter and filed a formal complaint on August 27, 2019. *Id.* at 3, 9. A series of exchanges ensued to clarify the claim that would be investigated, ending in:

> Whether the Office of Government National Mortgage Association discriminated against you based on race (African American) and age (YOB: 1961) when the Director,

---

[1] Plaintiff does not allege Purvis's race or age.

Program Administration Division obstructed your opportunity to apply for an Office of Securities Operations position when the position was filled July 21, 2019 without announcing the position.[2]

*Id.* at 6. The Equal Employment Opportunity Commission ("EEOC") issued an Investigative Report, and on January 27, 2021, an Administrative Law Judge ("ALJ") issued a Notice of Proposed Summary Judgment ("the Notice") in favor of the Agency. ECF 14-3. After both parties replied, on April 19, 2021, the ALJ entered summary judgment in favor of the agency. ECF 14-4. Once Plaintiff's appeal opportunities were exhausted, Plaintiff was informed on July 22, 2024 that she had "the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days." ECF 14-6 at 5. Instead, Plaintiff filed a civil action in the Circuit Court for Prince George's County, Maryland. ECF 1-5.

## III.    LEGAL STANDARDS

Defendant seeks to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) governs situations where the Court is alleged to lack subject matter jurisdiction. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). Under that rule, the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E.W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "[T]he district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647. "If the court determines at any time that it lacks

---

[2] Plaintiff withdrew a claim relating to the failure to convert her to permanent appointment, and the agency dismissed other claims as untimely (relating to the job opportunities in April and May, 2019) or because the claims properly provided evidence in support of a single claim and not distinct claims (such as the reneged promise to convert all term employees to career status). ECF 14-2 at 6, 10–11.

subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008).

HUD also seeks dismissal pursuant to Rule 12(b)(6). That standard presumes the facts alleged by a plaintiff to be true, then assesses whether the complaint still fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a complaint must allege "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The Rule 12(b)(6) analysis is typically limited to the four corners of the Complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). However, other documents may be considered where they are "integral to and explicitly relied on in the complaint" and their authenticity is not challenged. *Id.* (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Notably, "[i]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Campbell v. Mayorkas*, 3:20-cv-697-MOC-DSC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. June 1, 2021) (quoting *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)); *see also Webb v. Potomac Elec. Power Co.*, Civ. No. TDC-18-3303, 2020 WL 1083402, at *2 (D. Md. Mar. 6, 2020) ("[T]he Court will consider

Webb's EEOC Charge, submitted with the Motion, as a document integral to the Amended Complaint because Webb referenced the EEOC Charge in the Amended Complaint and he has not objected to its authenticity."); *Evans v. Md. State Highway Admin.*, Civ. No. JKB-18-935, 2018 WL 4733159, at *1 n.1 (D. Md. Oct. 2, 2018) (same); *White v. Mortg. Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (same).

HUD's Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56(a). A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). But Rule 56(d) provides that pre-discovery summary judgment is inappropriate where the nonmovant shows by affidavit that she cannot present facts essential to justify her opposition. *See* Fed. R. Civ. P. 56(d). Plaintiff has done so here. ECF 15-1. Accordingly, this Court declines to convert the motion to a motion for summary judgment and will treat HUD's motion as a motion to dismiss.

## IV.    ANALYSIS

### A.  Rule 12(b)(1) jurisdictional argument

HUD first contends that this Court lacks subject matter jurisdiction because Plaintiff filed her action in the wrong court. The doctrine of derivative jurisdiction provides that a federal court's jurisdiction on removal must "mirror the jurisdiction that the state court had over the action prior to removal." *Palmer v. City Nat'l Bank of W. Va.*, 498 F.3d 236, 239 (4th Cir. 2007). In other

words, "If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." *Id.* at 244.

Although derivative jurisdiction is a longstanding doctrine, it has fallen into some disfavor. *See, e.g.*, Erwin Chemerinsky, FEDERAL JURISDICTION § 5.5, at 288 (1989) ("This rule has little justification, but has long existed."); 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 3d* § 3722, at 481, 487 (3d ed. 1998) (describing derivative jurisdiction as "the subject of a great deal of deserved criticism"). In the 1980s, Congress eliminated the doctrine altogether for cases removed pursuant to 28 U.S.C. § 1441. *See* 28 U.S.C. § 1441(f). At that time, however, Congress took no action to adjust the removal rules in 28 U.S.C. § 1442, which independently permits removal of cases filed against the United States, "any agency thereof," or any officer of a federal government agency for any official act. The Fourth Circuit has therefore ruled that cases removed pursuant to 28 U.S.C. § 1442 still remain subject to the doctrine of derivative jurisdiction. *Palmer*, 498 F.3d at 244–46.

HUD's argument is that sovereign immunity restricts employment discrimination claims against federal agencies to federal court. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976) (noting that Congress intended Title VII to create "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination"). Neither Title VII nor the Age Discrimination in Employment Act ("ADEA") (or any implementing regulations thereof) contains an express waiver of sovereign immunity allowing discrimination claims to be filed against the federal government in state court. It is evident, then, that the Circuit Court for Prince George's County lacked jurisdiction to adjudicate Plaintiff's discrimination claims. If derivative jurisdiction applies here, then, it would bar Plaintiff's claims.

This Court is unpersuaded, however, that HUD removed this case solely pursuant to § 1442. HUD's Notice of Removal quotes § 1441(a) for the proposition that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." ECF 1 ¶ 3. It then states, "Because this is a civil action against the federal agency U.S. Department of Housing and Urban Development, district courts of the United States have original jurisdiction over it," citing to § 1442. *Id.* At its conclusion, it notes that the action "is properly removed to this Court pursuant to 28 U.S.C. §§ 1346, 1441, 1442(a)(1), 1446, and 2679 *et seq.*" *Id.* at 2 (WHEREFORE clause). The Notice of Removal therefore expressly, and through its reasoning, rests removal of this case at least in part on § 1441.

In *Palmer*, the Fourth Circuit applied derivative jurisdiction to bar federal jurisdiction following a §1442 removal. 498 F.3d at 244–46. But it has not expressly addressed whether derivative jurisdiction applies where a case is removed pursuant to multiple statutes, including § 1441. In this Court's view, given the concerns about derivative jurisdiction that led Congress to take corrective action in § 1441(f), that statute applies to any removal in which § 1441 is cited, even if it is not the exclusive basis for removal.[3] Plaintiff's claims are therefore not barred by derivative jurisdiction.

### B.  Rule 12(b)(6) motion

Plaintiff's Second Amended Complaint raises eight claims. Each is addressed below.

### 1.  Unexhausted Claims

Plaintiff's EEOC charge, which was filed immediately following the expiration of her Term contracts and the cessation of her employment with HUD, resulted in the investigation and

---

[3] Because this Court finds that derivative jurisdiction does not bar Plaintiff's claim, it need not address Plaintiff's alternative argument that HUD waived the issue of derivative jurisdiction by raising it belatedly.

adjudication of only a single claim – whether Plaintiff suffered discrimination when the career position was filled on July 21, 2019 without being open for applications. Title VII and the ADEA require that a federal employee exhaust all administrative remedies before suit can be filed in federal court. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). The purpose is to put the employer on notice of the alleged violations so that, if possible, the matter can be resolved out of court. *See Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). Although exhaustion is a claim-processing rule and not a jurisdictional requirement, the Fourth Circuit has limited the "scope of the plaintiff's right to file a federal lawsuit" to the contents of the administrative complaint she pursued. *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012) (quoting *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)).

In her Second Amended Complaint, Plaintiff raises a number of claims that did not appear in her administrative charge or were not exhausted through the administrative process. Specifically, she did not allege that she was retaliated against for protected activity she took in December, 2018 (Count Three), that she experienced a hostile work environment (Count Four), that she suffered constructive discharge (Count Five), or that African Americans suffered a disparate impact from the facially neutral practice of permitting positions to be filled without posting (Count Six). And while Plaintiff's charge could be read to allege a failure to convert her to a career employee as promised to all Term employees (Count Eight), she expressly disclaimed to the EEOC an intent to pursue her administrative remedies for that claim. ECF 14-2 at 6.[4]

---

[4] Plaintiff's Opposition makes a series of references to the Americans with Disabilities Act ("ADA") and Rehabilitation Act. *See* ECF 15 at 8, 12, 14–15, 17. No such claims have been made in the EEOC charge or in the Second Amended Complaint.

Plaintiff's contention that the various claims were "reasonably related" to the charge she made, such that they would be within the investigation, is unavailing. The administrative record demonstrates detailed, interactive consideration of what claims would or would not be investigated, and these various claims were not included. Accordingly, the unexhausted claims in Counts Three–Six and Eight will be dismissed.[5]

### 2. Civil Service Reform Act (Count Seven)

In Count Seven, Plaintiff alleges a "violation of merit system principles" established in the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 2301, and the Merit Systems Protection Board regulations. The CSRA, however, does not provide for general judicial review of an agency's employment practices. It allows "[a]ny employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board" to obtain judicial review of that order or decision. 5 U.S.C. § 7703(a)(1). Plaintiff pursued no such claim. She cites no authority for the type of CSRA claim she asserts, and in fact concedes in her opposition that "violations of the CSRA alone may not create a private right of action." ECF 15 at 19. Count Seven will therefore also be dismissed.

### 3. Race Discrimination (Count One) and Age Discrimination (Count Two)

Plaintiff makes broad allegations in her race and age discrimination counts. Some of the allegations Plaintiff sets forth in Counts One and Two (such as the failure to convert) are not exhausted. Others are time-barred, as the EEOC expressly declined to consider the April and May events because they were not reported within 45 days of the effective date of the action. *See Wills*

---

[5] Count Eight, Plaintiff's failure to promote claim, is somewhat duplicative of the race discrimination claim in Count One, which makes similar allegations about HUD's allegedly discriminatory decision not to post certain positions. It does not plausibly allege the elements of a traditional failure to promote claim, which requires allegations that Plaintiff "applied for the position in question." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 544–45 (4th Cir. 2003).

*v. MPF Fed., LLC*, Civ. No. RDB-23-1158, 2025 WL 1101755, at *4 (D. Md. Apr. 14, 2025) ("A complainant 'must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.") (quoting 29 C.F.R. § 1614.105(a)(1)).

Plaintiff asserts a number of non-persuasive reasons why the older claims should still be considered despite the lack of administrative exhaustion. First, she argues that the continuing violation doctrine should apply, citing the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). ECF 15 at 12. *Morgan* does not support Plaintiff's position, as it specifies that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *See id.* at 113. The Supreme Court specified "failure to promote" and "refusal to hire" as examples of discrete discriminatory acts, noting that they differ from the type of more subtle discriminatory conduct that might underly a "continuing violation" hostile work environment claim. *Id.* at 114. Here, Plaintiff is readily able to identify the dates of the incidents she claims to have been discriminatory. ECF 15 at 12 (citing the "exclusion in December 2018, extended through manipulated posting processes in April to May 2019, and culminated in discriminatory hires in July 2019"). Those are discrete discriminatory acts, not continuing violations. Second, she argues that her other claims are "reasonably related" and might have been part of the EEOC's investigation. ECF 15 at 13. That argument is inapposite because the EEOC expressly excluded those claims from its consideration. Finally, she makes a cursory argument that "equitable tolling applies," ECF 15 at 14, without any case citations or explanations of her theory. Her argument about pursuing agency reconsideration of the claim she had exhausted does not explain why her deadline for filing other claims (some of

which she expressly excluded from consideration by the EEOC or that the EEOC already deemed too late) should be equitably tolled.

What remains for consideration, then, is the only exhausted claim: Whether Plaintiff was discriminated against on the basis of her race or age when the July 21, 2019 job was filled without posting? And as to that claim, Plaintiff has failed to plead a plausible claim in the Second Amended Complaint. She alleges no facts constituting direct evidence of intentional race or age discrimination, such as comments made by the decisionmaker suggesting class-based animus. She must therefore plead a plausible claim under the *McDonnell Douglas* burden-shifting scheme. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The *McDonnell Douglas* standard begins with a *prima facie* case established by the Plaintiff, which must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir.2010); *see also Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 650 (4th Cir. 2021) (explaining the *McDonnell Douglas* framework). While a plaintiff need not plead facts supporting each element of a *prima facie* case in the complaint, she must plead sufficient facts to establish a plausible discrimination claim to meet the *Twombly* standard. *See Coleman*, 626 F.3d at 190 (4th Cir. 2010) ("[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level . . . .'") (second alteration in original) (citation omitted) (quoting *Twombly*, 550 U.S. at 555).

Plaintiff has failed to plead facts supporting two critical aspects of a discrimination claim. First, she has not plausibly pleaded that the agency's decision to fill the July 21, 2019 position

11

through reassignment, as permitted by federal personnel regulations, constituted an "adverse employment action" as to Plaintiff. *See* 5 C.F.R. § 335.103(c)(3)(v) (allowing agencies "at their discretion" to except the reassignment of employees from competitive procedures); 5 C.F.R. § 330.102 (permitting an agency to "fill a vacancy in the competitive service by any method authorized in this chapter, including . . . reassignment"). The decision to reassign another employee to fill the vacancy did not alter Plaintiff's existing compensation, job title, duties, or employment status.

Second, Plaintiff has not plausibly pleaded that she received different treatment from similarly situated employees outside her protected class. With respect to Purvis, the candidate reassigned to fill the open career position on July 21, 2019, Plaintiff has not pleaded her race or age. Nor has she pleaded that Plaintiff was similarly situated to Purvis in the sense that they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Plaintiff instead pleads that she was treated differently from "every other similarly situated Term employee," ECF 13 ¶ 28, noting that she was the oldest and the only African American. *Id.* ¶¶ 31, 32. Again, though, Plaintiff has not established that the other "Term employees" in that group were similarly situated in terms of their supervisor, job responsibilities, and other relevant circumstances. Absent such allegations, she has not plausibly pleaded that the disparate treatment was premised on race or age discrimination.

## V.      CONCLUSION

For these reasons, HUD's Motion, ECF 14, will be treated as a motion to dismiss and will be granted. This case will be closed, subject to reopening should Plaintiff file a motion for leave to amend the claims in her complaint relating to the July 21, 2019 opening within twenty-one days of this memorandum opinion and order.


Dated: March 6, 2026                                      _____/s/_____

                                                          Stephanie A. Gallagher
                                                          United States District Judge

13