**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SHERRYLYN MITCHELL,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. SAG-25-01149** |
| **SCOTT TURNER, Secretary, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT** | * | |
| **Defendants.** | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Sherrylyn Mitchell ("Plaintiff"), at the time self-represented, filed this action in state court against Defendant Scott Turner, Secretary of the Department of Housing and Urban Development (HUD). ECF 1-4. HUD removed the case to this Court, ECF 1. Plaintiff subsequently retained counsel, who filed a Second Amended Complaint, ECF 13. On March 6, 2026, this Court granted HUD's first motion to dismiss the case, subject to reopening should Plaintiff amend her claims. ECF 18.

On June 1, 2026, Plaintiff filed a Third Amended Complaint, ECF 27. HUD has now filed a new motion to dismiss Plaintiff's claims, ECF 29. Plaintiff opposed the motion, ECF 31, and HUD filed a reply, ECF 32. After reviewing all of the filings, the Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, HUD's motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

The following facts relevant to this motion are derived from the Third Amended Complaint, ECF 27, and are assumed to be true for the purposes of adjudicating this motion.

Plaintiff, an African American woman born in 1961, began work as a Grade 14 Term Employee in HUD's Ginnie Mae division on August 7, 2017. *Id.* ¶¶ 6, 8. At the time of her employment at HUD, Plaintiff possessed over twenty years of mortgage industry experience, *id.* ¶ 9, and certifications in business analysis and federal acquisitions, *id.* ¶ 10. During Plaintiff's employment with HUD, the agency did not identify any performance deficiency, disciplinary issue, or other concerns with Plaintiff's conduct and she received "Fully Successful" performance ratings in both FY2017 and FY2018. *Id.* ¶ 11.

During an all-hands meeting on June 19, 2018, Ginnie Mae's Executive Vice President announced that Career Conditional positions would be created for all Term employees. *Id.* ¶ 15. In September, 2018, Plaintiff's supervisor, Victoria Vargas, informed Plaintiff that she would not advertise or post a position for Plaintiff. *Id.* ¶ 14. In December, 2018, Plaintiff learned that all other Term employees in the Office of Securities Operations had been given the opportunity to apply for jobs and convert to Career Conditional status. *Id.* ¶ 17. These other Term employees possessed fewer qualifications than Plaintiff and reported "to the same supervisory chains" as Plaintiff. *Id.* ¶¶ 22–29. Of the Term employees, Plaintiff was the oldest and the only African American. *Id.* ¶¶ 22–29, 48.

Plaintiff contacted the Senior Vice President of the Office of Securities Operations, John Daugherty, "to raise concerns of discrimination." *Id.* ¶ 18. Daugherty expressed surprise that Plaintiff had not been converted to a Career Conditional position and told her it was an "oversight" and "mistake" that would be rectified in 2019. *Id.* ¶¶ 18–19.

In March, 2019, Vargas informed Plaintiff that her term employment with HUD would not be extended beyond August 7, 2019. *Id.* ¶ 21. In April and May of 2019, two Career Conditional Senior Business Analyst vacancies opened up in Plaintiff's division, but Vargas "diverted" the

positions to another manager and structured the announcements "to exclude Term employees from applying." *Id.* ¶¶ 32–33. Vargas recruited Brad Dunn, an approximately 41-year-old white male, to fill one of the Career Conditional vacancies. *Id.* ¶ 34.

On July 21, 2019, Vargas filled the second Career Conditional vacancy without posting it; reassigning Sylvia Purvis, an African American female "in her mid-to-late forties" from HUD headquarters to fill the role. *Id.* ¶¶ 37–38. Vargas and Purvis "had been personal friends for many years" prior to Purvis's reassignment. *Id.* ¶ 40. Purvis lacked experience in mortgage securitization and had "no knowledge of the computer systems" used by Plaintiff's division. *Id.* ¶ 38–39. Purvis's reassignment eliminated the last available Career Conditional vacancy in Plaintiff's HUD division before her term expired. *Id.* ¶¶ 43–44.

## II. PROCEDURAL BACKGROUND

Plaintiff made initial contact with an Equal Employment Opportunity Commission ("EEOC") counselor on July 22, 2019, the day after Purvis was hired. ECF 14-2 at 2. She received a Right to File letter and filed a formal complaint on August 27, 2019. *Id.* at 9. A series of exchanges ensued to clarify the claim that EEOC would investigate, ending in:

> Whether the Office of Government National Mortgage Association discriminated against [Plaintiff] based on race (African American), and age (YOB: 1961) when the Director, Program Administration Division obstructed [Plaintiff's] opportunity to apply for an Office of Securities Operations position when the position was filled July 21, 2019 without announcing the position.[1]

*Id.* at 6, 10–11. The EEOC issued an Investigative Report on January 26, 2020, with a Notice of Proposed Summary Judgment ("the Notice") in favor of the Agency. *Id.* at 14; ECF 14-3. After

[1] Plaintiff withdrew a claim relating to the failure to convert her to a permanent appointment, and the agency dismissed other claims as untimely (relating to the job opportunities in April and May, 2019) or because the claims properly provided evidence in support of a single claim and not distinct claims (such as the reneged promise to convert all term employees to career status). ECF 14-2 at 6, 10–11.

both parties replied, on April 19, 2021, the agency issued a Final Agency Decision incorporating the ALJ's analysis from the Notice. Once Plaintiff's appeal opportunities were exhausted, Plaintiff was informed on July 22, 2024, that she had "the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days." ECF 14-6 at 5. Instead, Plaintiff filed a civil action in the Circuit Court for Prince George's County, Maryland. ECF 1-5. HUD removed the case to this court on April 7, 2025. ECF 1.

Plaintiff subsequently retained counsel, who filed a Second Amended Complaint. ECF 13. On March 6, 2026, this Court granted HUD's first motion to dismiss the case, subject to reopening should Plaintiff amend her claims. ECF 18. On June 1, 2026, Plaintiff filed a Third Amended Complaint. ECF 27. HUD now moves to dismiss Plaintiff's amended claims, ECF 29.

## III. LEGAL STANDARDS

Defendant seeks to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). That standard presumes the facts alleged by a plaintiff to be true, then assesses whether the complaint still fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a complaint must allege "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plausibility requires the plaintiff to plead "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The Rule 12(b)(6) analysis is typically limited to the four corners of the Complaint. However, other documents may be considered where they are "integral to and explicitly relied on in the complaint." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Notably, "[i]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Campbell v. Mayorkas*, MOC-20-697, 2021 WL 2210895, at *1 n.3 (W.D.N.C. June 1, 2021) (citing *Golden v. Mgmt. & Training Corp*., 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)); *see also Webb v. Potomac Elec. Power Co.*, TDC-18-3303, 2020 WL 1083402, at *2 (D. Md. Mar. 6, 2020) ("[T]he Court will consider Webb's EEOC Charge, submitted with the Motion, as a document integral to the Amended Complaint because Webb referenced the EEOC Charge in the Amended Complaint and he has not objected to its authenticity."); *Evans v. Maryland State Hwy. Admin*., JKB-18-935, 2018 WL 4733159, at *1 n.1 (D. Md. Oct. 2, 2018) (same); *White v. Mortg. Dynamics, Inc*., 528 F. Supp. 2d 576, 579 (D. Md. 2007) (same).

## IV. DISCUSSION

Title VII and the ADEA require that a federal employee exhaust all administrative remedies before suit can be filed in federal court. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2002). The purpose of the exhaustion requirement is to put the employer on notice of the alleged violations. *See Miles v. Dell, Inc.,* 429 F.3d 480, 491 (4th Cir. 2005). Although exhaustion is a claim-processing rule and not a jurisdictional requirement, the Fourth Circuit has limited the "scope of the plaintiff's right to file a federal lawsuit" to the contents of the administrative complaint she pursued. *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012) (citation omitted). Plaintiff's

EEOC charge, which was filed immediately following the expiration of her Term contracts and the cessation of her employment with HUD, resulted in the investigation and adjudication of only two claims—whether Plaintiff was discriminated against on the basis of her race or age when the July 21, 2019 career conditional vacancy was filled without posting. This Court's consideration is thus limited to those two claims.

**A. Count I: Race Discrimination**

Eventually, to make out a prima facie case of race discrimination under Title VII, Plaintiff must present evidence—either direct or circumstantial under the *McDonnell Douglas* burden shifting framework—that HUD discriminated on the basis of race when it filled the July, 2019 vacancy by internal reassignment, instead of posting the vacancy for competition.[2] However, at the motion to dismiss stage, Plaintiff does not need to establish this prima facie case; she need only plausibly "allege facts to satisfy the elements of a cause of action created by [Title VII]."

---

[2] Among other arguments, HUD asserts that Plaintiff's Title VII claim should be dismissed because she fails to establish an "adverse employment action" against her. ECF 29-1 at 7–10. That argument is unavailing. Plaintiff's assertion that she was not converted from Term employment to a Career Conditional position despite promises to the contrary can be read as a "failure to promote" claim. A plaintiff successfully alleges a "failure-to-promote" claim if she plausibly alleges: "(1) she is a member of a protected group, (2) there was a specific position for which she applied, (3) she was qualified for that position, and (4) [the defendant] rejected her application under circumstances that give rise to an inference of discrimination." *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 544–45 (4th Cir. 2003)). However, "if the employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if she had actually applied for a specific position." *Id.* at 431. This is because "requiring the plaintiff to show that he or she applied for the specific jobs at issue would be unrealistic where the employer did not post the vacancy, as an employee by definition cannot apply for a job that he or she does not know exists." *Id.* (quoting *Mauro v. So. New England Telecomms., Inc.*, 208 F.3d 384, 387 (2d Cir. 2000)) (internal quotation marks omitted). Here, Plaintiff is a member of a protected group, *see* ECF 27 ¶ 6, and plausibly alleges she was qualified for the July, 2019 vacancy, *id.* ¶¶ 8–11, 44, satisfying the first and third requirements. Because Defendant failed to post the July, 2019 vacancy, *id.* ¶ 37, the application requirement is relaxed and the Court treats Plaintiff as if she applied for the role. Plaintiff's claim thus hinges on whether she pleaded sufficient facts to show a plausible inference of discrimination.

*McCleary-Evans v. Maryland Dept. of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015), *cert. denied*, 577 U.S. 1138 (2016). In this case, she would need to allege facts plausibly suggesting HUD "fail[ed] or refus[ed] to hire" Plaintiff or otherwise discriminated against Plaintiff "with respect to [her] compensation, terms, conditions, or privileges of employment, *because of* [her] race." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Put simply, Plaintiff's complaint must plausibly allege that HUD did not allow her to compete for the July, 2019 vacancy *because* she was African American, not "that she was [African American] and was not [allowed to compete]." *Autry v. North Carolina Dep't of Hum. Res.*, 820 F.2d 1384, 1386 (4th Cir. 1987).

Plaintiff's complaint fails to make this showing. To be sure, Plaintiff has pleaded facts that suggest Vargas's decision to reassign Purvis to the July, 2019 vacancy was arbitrary or not fully merit based. Most notably, Plaintiff highlighted that while she possessed decades of relevant experience and credentials in the mortgage industry, Purvis had no relevant mortgage securitization experience and no knowledge of OSO's computer systems. ECF 27 ¶¶ 38–39. Further, Plaintiff alleged that Ms. Vargas and Ms. Purvis had been personal friends for many years prior to Purvis's reassignment. *Id.* ¶ 40. However, Plaintiff's complaint fails to connect Vargas's favoritism toward the younger and allegedly less-qualified Purvis to any sort of racial bias against Plaintiff. *Cf. Holder v. City of Raleigh*, 867 F.2d 823, 825–26 (4th Cir. 1989) (noting that "favoritism toward friends and relatives" is not a Title VII violation if it is not tied to discrimination against a protected characteristic). This is especially true because Purvis, like Plaintiff, is African American.[3] *Cf. Miles*, 429 F.3d at 488 ("[R]eplacement within [a] protected class gives rise to an

[3] Plaintiff's complaint rightly acknowledges that Purvis cannot serve as a racial comparator for her Title VII claim because they are both African American. *See* ECF 27 ¶ 42. Plaintiff's Third Amended Complaint thus offers four younger non-African-American OSO term employees who were converted to Career Conditional positions to serve as comparators. *See id.* ¶¶ 22–29. However, Plaintiff has not alleged that these term employees applied for, or were considered for,

inference of non-discrimination with respect to [that] protected status."). Plaintiff's complaint thus "stops short of the line between possibility and plausibility of entitlement to relief" under Title VII. *Twombly*, 550 U.S. at 557 (citation omitted). Count One will therefore be dismissed.

**B. Count II: Age Discrimination**

The Age Discrimination in Employment Act (ADEA) makes it unlawful for employers "to fail or refuse to hire or . . . or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).[4] To succeed on an ADEA claim, a plaintiff must ultimately prove by a preponderance of the evidence that age was the "but-for" cause of a challenged employment action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). "[F]or an event to be the 'but-for cause,' it need not be the sole cause of the adverse employment action." *Arthur v. Pet Dairy*, 593 F. App'x 211, 220–21 (4th Cir. 2015). Instead, but-for causation may be found where age was the "determinative factor" in an adverse employment decision. *Id.* To survive a motion to dismiss, then, Plaintiff must plead factual allegations, taken as true, that create a plausible inference that age was the determinative factor in HUD not allowing Plaintiff to compete for the July, 2019 vacancy.

The Court finds that Plaintiff's Third Amended Complaint satisfies this burden. Plaintiff has pleaded that (1) she was 57 years old at the time of the July, 2019 reassignment, ECF 27 ¶ 8, while Purvis was in her "mid-to-late forties"; (2) Plaintiff had significant experience in the

---

the July, 2019 vacancy—the subject of Plaintiff's exhausted claims. Even if this Court broadens the comparison to HUD's failure to convert Plaintiff's term employment to Career Conditional employment, Plaintiff still pleads insufficient facts to show that these other Term employees were "similarly situated" in their roles and supervisors. *See Haywood v. Locke*, 387 F. App'x 355, 358–360 (4th Cir. 2010). These term employees thus cannot serve as comparators for Plaintiff's age or race discrimination claims.

[4] The ADEA applies "to individuals who are at least 40 years of age." 29 U.S.C. § 631(a).

mortgage industry, *id.* ¶ 9–10, while Purvis had none, *id.* ¶ 38; and (3) Vargas had actual knowledge of Plaintiff's birth date from signing authorization and training forms on several occasions that listed Plaintiff's date of birth, *id.* ¶ 8. Given Plaintiff's allegation that Vargas and Purvis were friends for "many years," *id.* ¶ 40, it can plausibly be inferred that Vargas also had knowledge of Purvis's younger age. Drawing all inferences in Plaintiff's favor at this early stage of the litigation, Plaintiff has pleaded facts sufficient to create a plausible inference that Plaintiff's age was the determinative factor in Vargas's decision to reassign Purvis to fill the July, 2019 vacancy, rather than post the vacancy for Plaintiff to compete. HUD's motion to dismiss is thus denied with respect to Count II.

## V. CONCLUSION

For the reasons stated above, HUD's Motion, ECF 29, will be GRANTED as to Count I (Race Discrimination). That claim is DISMISSED. The Motion is DENIED as to Count II (Age Discrimination). A separate Order follows.

Dated: August 25, 2026

/s/
Stephanie A. Gallagher
United States District Judge